IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAMELA PENDLETON, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-6619 |
| | : | |
| JEVS HUMAN SERVICES, INC., et al. | : | |

**ORDER**

AND NOW, this 25th day of August, 2017, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, Plaintiffs' opposition thereto, and Defendants' reply, and after a July 10, 2017, oral argument on the Motion, it is ORDERED the Motion (Document 19) is GRANTED in part and DENIED in part as follows:

- The Motion is GRANTED as to Counts V (Pennsylvania Wage Payment and Collection Law), VI (Breach of Contract), VII (Unjust Enrichment), and IX (Conversion) of the Amended Complaint, which are DISMISSED with prejudice.[1]

---

[1] Plaintiffs Pamela Pendleton and Vernon Costin bring this putative class and collective action lawsuit against JEVS Human Services, Inc. and Jewish Employment & Vocational Service, Inc. d/b/a JEVS Human Services (collectively, "JEVS"), challenging JEVS's failure to pay them and the other members of the proposed class minimum wage and overtime and to provide them with employee benefits for their work as "primary life-sharing caregivers." Plaintiffs allege JEVS's failure to pay them minimum wage and overtime violates the Fair Labor Standards Act (FLSA), the Pennsylvania Minimum Wage Act (PMWA), and the Pennsylvania Wage Payment and Collection Law (WPCL); constitutes a breach of their contracts with JEVS, unjust enrichment, and conversion; and is racially discriminatory, in violation of 42 U.S.C. § 1981. Plaintiffs also bring claims pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) and for an accounting at law and equity.

JEVS provides "life-sharing services" to individuals with intellectual disabilities ("Individuals") in the Philadelphia region. Life-sharing is a form of residential housing wherein an Individual resides with a "primary life-sharing caregiver" who provides direct care to the Individual in the caregiver's own residence. Life-sharing programs are governed by regulations promulgated by the Pennsylvania Department of Public Welfare (DPW) (now known as the Department of Human Services). Plaintiffs currently work, or have in the past worked, as primary life-sharing caregivers pursuant to standard form contracts with JEVS, entered into pursuant to the applicable DPW regulations. Under the terms of the contracts—which are attached to the Amended Complaint and therefore may properly be considered at the motion to

dismiss stage, *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)—JEVS is required to pay Plaintiffs a fixed daily rate. The contracts prior to August 2016 required JEVS to pay the caregiver "the daily rate of $60" as "reimbursement for all expenses, including but not limited to room and board . . . and utilities"). Am. Compl. Ex. C ¶ 11, Ex. G. ¶ 12. Beginning in August 2016, the contracts require JEVS to pay the caregiver "$68 each day that the [Individual] is in the [caregiver's] care" in consideration of the caregiver's provision of "Home Support Services . . . [and] performance of [his or her] other Contract obligations." *Id.* Ex. M ¶ 7(A). JEVS does not pay primary life-sharing caregivers minimum wage or overtime and does not provide them with employee benefits. Plaintiffs allege JEVS's failure to treat caregivers as employees and to compensate them accordingly violates federal and state law.

JEVS asks this Court to dismiss Plaintiffs' Amended Complaint in its entirety. Upon review of the parties' written submissions and presentations at oral argument, this Court is persuaded dismissal is appropriate as to Plaintiffs' claims for breach of contract, violations of the WPCL, unjust enrichment, and conversion.

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts pleaded must support "more than a sheer possibility that a defendant has acted unlawfully"; they must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must then "'determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). The breach of contract claim in this case founders on the second element. Although Plaintiffs allege JEVS breached a contractual duty by failing to pay them and the other class members "at least minimum wage for all hours worked and overtime for each hour worked in excess of forty in a work week," Am. Compl. ¶ 239; *see also id.* ¶ 237, the contracts themselves do not impose such a duty. As noted, with respect to compensation, the contracts provide for payment of a per diem rate. Plaintiffs do not point to any contract provision requiring payment of hourly wages and overtime. Rather, Plaintiffs argue JEVS has a contractual duty to pay them minimum wage and overtime because the contracts—by incorporating the DPW regulations governing life-sharing programs, which Plaintiffs contend classify caregivers as employees, and by giving JEVS the right to control Plaintiffs' performance of their duties under the contracts—make clear that primary life-sharing caregivers are employees of JEVS. This argument lacks merit. If Plaintiffs are correct that caregivers are properly classified as employees of JEVS, then JEVS may have a *statutory* obligation to pay them minimum wage and overtime under the FLSA and the PMWA. Plaintiffs cite no authority for the proposition that this statutory obligation gives rise to a contractual duty, and the case law of which this Court is aware does not support this argument. *See Vasil v. Dunham's Athleisure Corp.*, No. 14-690, 2015 WL 1296063, at *4

(W.D. Pa. Mar. 23, 2015) (holding an employer's misclassification of an employee as exempt under the FLSA did not "reform [the employee's] salary-based contract into an hourly-based one" and thus did not give rise to a remedy "grounded in the employment contract itself"); *cf. Beloit v. Killion & Sons Well Serv., Inc.*, No. 16-362, 2016 WL 4539624, at *2 (W.D. Pa. Aug. 31, 2016) (rejecting the argument that the existence of an employment contract gives rise to a contractual duty to pay overtime pursuant to the FLSA and the PMWA); *Carpenter v. R.M. Shoemaker Co.*, No. 00-5644, 2002 WL 987990, at *7 (E.D. Pa. May 6, 2002) (rejecting the argument that a contractual obligation to pay overtime arises as a result of an employer's "implicit[] agree[ment] to compensate [employees] in accordance with all applicable law, including overtime prescribed by the FLSA"). Because Plaintiffs have failed to plausibly allege that JEVS has a contractual duty to pay them minimum wage and overtime, the breach of contract claim is dismissed.

The lack of a contractual obligation to pay minimum wage and overtime is also fatal to Plaintiffs' WPCL claim. The WPCL "does not create a right to compensation[;] [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990); *see also, e.g., De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Andrews v. Cross Atl. Cap. Partners, Inc.*, 158 A.3d 123, 133 (Pa. Super. Ct. 2017). Thus, to state a claim for a violation of the WPCL, a plaintiff must allege that the defendant "had a contractual obligation, express or implied, to pay" the wages sought. *Beloit*, 2016 WL 4539624, at *2. The WPCL claim here is premised not on JEVS's failure to pay Plaintiffs the per diem rate specified in the contracts, but on the failure to pay Plaintiffs minimum wage and overtime. *See* Am. Compl. ¶ 224. Because Plaintiffs have not plausibly alleged that JEVS had a contractual obligation to pay such amounts, the WPCL claim is dismissed.

Dismissal is also warranted as to Plaintiffs' unjust enrichment claim. Unjust enrichment is a quasi-contractual doctrine that permits recovery in the absence of an express contract between the parties when the defendant "either wrongfully secured or passively received a benefit that . . . would be unconscionable for her to retain." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 273 (3d Cir. 2010) (citation omitted). The doctrine is thus "inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 169-70 (3d Cir. 2014) (quoting *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987); *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 448 (Pa. 1969). The existence of written contracts between Plaintiffs and JEVS is not in doubt in this case; indeed, the contracts themselves are attached to the Amended Complaint. Am. Compl. Exs. C, G, H, M. Plaintiffs concede, moreover, that these contracts "govern [their] employ as . . . JEVS primary life-sharing caregiver[s]." *Id.* ¶¶ 51, 64; *see also id.* ¶ 154 ("JEVS entered into written employment contracts with all primary life-sharing caregivers, with the same terms and conditions set forth in Plaintiffs' contracts."). Despite Plaintiffs' acknowledgement that their relationship with JEVS is governed by their contracts with JEVS, they argue they should be permitted to pursue their unjust enrichment claim at this stage as an alternative theory. While pleading in the alternative is generally permitted under Federal Rule of Civil Procedure 8(d)(2), "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially

- The Motion is also GRANTED as to Count VIII (Accounting at Law and Equity), which is DISMISSED as withdrawn.[2]

- The balance of the Motion is DENIED.

A scheduling order will be entered separately.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

available remedy." *Grudkowski*, 556 F. App'x at 170 n.8. Because the validity of Plaintiffs' contracts with JEVS is not at issue here, Plaintiffs unjust enrichment claim is dismissed.

    Finally, Plaintiffs' conversion claim must also be dismissed. The tort of conversion is defined in Pennsylvania as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (citation omitted). Although "[m]oney may be the subject of conversion[,] . . . failure to pay a debt is not conversion." *Id.* (internal quotation marks and citation omitted). Rather, conversion of money is actionable only if the plaintiff had a property interest in the funds—i.e., if the funds belonged to the plaintiffs—at the time they were allegedly converted. *See Scott v. Phila. Hous. Auth.*, No. 10-4723, 2011 WL 1791095, at *10 (E.D. Pa. May 11, 2011); *Kia v. Imaging Scis. Int'l, Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010). Here, Plaintiffs allege that by failing to pay them and the class minimum wage and overtime, JEVS converted wages "owed" to them, Am. Compl. ¶ 254, and the essence of the conversion claim is thus JEVS's failure to pay a debt, *see Scott*, 2011 WL 1791095, at *12 (holding a plaintiff does not have a sufficient property interest in withheld wages to sustain a cause of action for conversion). Accordingly, the conversion claim is also dismissed.

[2] In their memorandum in opposition to the Motion to Dismiss, Plaintiffs indicate they are withdrawing this Count. *See* Pls.' Opp'n 1 n.1.